UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

PETE DIETER,                                                                                          Case No. 20-CV-2220 (PJS/LIB)

               Plaintiff,

v.                                                                                                                    ORDER

GARDNER BUILDERS MINNEAPOLIS, LLC, d/b/a
Gardner Builders; GARDNER BUILDERS
DULUTH LLC, d/b/a Gardner Builders; LHB, INC.;
and JENNIFER M. BABCOCK,

               Defendants.

LHB, INC. and JENNIFER M. BABCOCK,

    Cross-Claimants and Third-Party Plaintiffs,

v.

GARDNER BUILDERS MINNEAPOLIS, LLC, d/b/a
Gardner Builders and GARDNER BUILDERS
DULUTH LLC, d/b/a Gardner Builders,

               Cross-Defendants.

ALLIANCE CONCRETE SAWING & DRILLING
IV, LLC,

               Third-Party Defendant.

    Joel E. Smith, Mark R. Kosieradzki, and Susan E. Craig, KOSIERADZKI SMITH LAW FIRM, LLC, for Pete Dieter.

    Joel M. Muscoplat and Nicholas J. O'Connell, MEAGHER & GEER, P.L.L.P., for Gardner Builders Minneapolis, LLC.

Kevin J. Kennedy and Kerry A. Trapp, BORGELT, POWELL, PETERSON & FRAUEN, S.C., for Gardner Builders Duluth, LLC.

Eric R. Heiberg and Elizabeth Ridley Scott, HELEY, DUNCAN & MELANDER, PLLP; Juan M. Avila, ARTHUR, CHAPMAN, KETTERING, SMETAK & PIKALA, P.A., for LHB, Inc. and Jennifer M. Babcock.

Brock P. Alton and Andrew R. Brown, REDING & PILNEY, LLC, for Alliance Concrete Sawing & Drilling IV, LLC.

This case arises out of an accident that occurred during a construction project at the Duluth Armory.  LHB, Inc. and its employee, Jennifer Babcock (collectively "LHB"), provided design and engineering services for the project.  Gardner Builders Duluth, LLC ("Gardner Builders")[1] was the general contractor, and Alliance Concrete Sawing & Drilling IV, LLC ("Alliance") was the demolition subcontractor.

On December 5, 2018, plaintiff Pete Dieter, an Alliance employee, was injured when part of the drill-hall floor collapsed during removal of the floor's concrete "topping."  Dieter brings negligence claims against LHB and the Gardner Builders entities.  Among other claims, Dieter alleges that LHB was negligent in failing to adequately disclose the dangerously unstable condition of the drill-hall floor and in

---

[1] Apparently unsure which entity served as the general contractor, plaintiff sued both Gardner Builders Duluth, LLC and Gardner Builders Minneapolis, LLC.  So far as the Court can tell, the parties appear to agree that Gardner Builders Duluth, LLC served as the general contractor.  It is therefore not entirely clear (at least to the Court) why Gardner Builders Minneapolis, LLC remains a party.

failing to specify in its plans that the floor should be supported with shoring during demolition.

This matter is before the Court on LHB's motion for summary judgment. For the reasons that follow, the motion is denied.

LHB first argues that, because the contract documents governing the project specify that the general contractor was solely responsible for site safety, LHB did not owe any duty to ensure the safety of the site. *See Moundsview Indep. Sch. Dist. No. 621 v. Buetow & Assocs.*, 253 N.W.2d 836, 839 (Minn. 1977) ("consideration of whether Buetow breached a duty of supervision requires an initial examination of the contract between the parties to determine the parameters of its supervisory obligation"); *see also Gradjelick v. Hance*, 646 N.W.2d 225, 233 (Minn. 2002) (the elements of a negligence claim are "duty, breach, causation, and damages").

There is no dispute, however, that, as a general matter, "[o]ne who undertakes to render professional services is under a duty to the person for whom the service is to be performed to exercise such care, skill, and diligence as men in that profession ordinarily exercise under like circumstances." *City of Eveleth v. Ruble*, 225 N.W.2d 521, 524 (Minn. 1974). Expert evidence is ordinarily required to establish the prevailing standard of care in a particular profession. *Id.* at 525. Here, two engineering experts have submitted reports opining that an engineer has a duty to disclose known unsafe conditions, even

while acknowledging that Gardner Builders had the sole contractual duty to ensure site safety.² Smith Aff. [ECF No. 98] Ex. 1 at 9, 15; *id.* Ex. 2 at 15, 19. The experts all further opine that LHB breached this duty by failing to adequately disclose the unsafe condition of the drill-hall floor. *Id.* Ex. 1 at 11, 15; *id.* Ex. 2 at 15, 19; *id.* Ex. 3 at 13, 18, 30. Dieter has therefore offered sufficient evidence to create a jury question concerning whether LHB breached the prevailing standard of care.

LHB cites *Eleria v. City of St. Paul*, No. A10-1045, 2010 WL 5293742 (Minn. Ct. App. Dec. 28, 2010), for the proposition that "an affidavit from an expert cannot create a duty where none exists." *Id.* at *7 (cleaned up). But in this case, it is undisputed that LHB *did* have a duty—a duty "to exercise such care, skill, and diligence as men in that profession ordinarily exercise under like circumstances." *City of Eveleth*, 225 N.W.2d at 524. Expert testimony is necessary to establish what that duty entailed under the circumstances of this case.

*Eleria* is distinguishable. In *Eleria*, the unsafe condition—the risk of flooding in a tunnel—was fully disclosed, and the contractor was required to have an evacuation plan in place; the decedent was killed after he failed to immediately evacuate in accordance with the plan. *Id.* at *2–4. There is no suggestion in *Eleria*—as there is in this

---

²A third expert likewise opines that LHB breached its duty to disclose the unsafe condition of the floor, *see* Smith Aff. Ex. 3 at 13, 18, 30, but the report does not discuss the contractual language imposing sole responsibility for site safety on Gardner Builders.

case—that the engineering firm knew of undisclosed risks or indeed that any act or omission by the engineering firm had any causal connection to the accident. Instead, the plaintiffs claimed that the firm had a duty to supervise the work site despite the fact that, as a contractual and regulatory matter, the firm clearly had no such duty. *Id.* at *6–7 & n.7.

Here, by contrast, the expert reports indicate that, under the prevailing standard of care applicable to engineers, LHB's role in preparing plans and specifications for the Duluth Armory project encompassed a duty to fully disclose the condition of the floor. In other words, the expert reports are not being used to *create* a duty; they are instead being used to explain what LHB was required to do to *fulfill* its undisputed duty "to exercise such care, skill, and diligence as [engineers] ordinarily exercise" in preparing plans and specifications for a project such as the Duluth Armory project. *City of Eveleth*, 225 N.W.2d at 524.

Even if the experts are incorrect about what was encompassed within LHB's general duty of care, LHB conceded at oral argument that, if an engineer has actual knowledge of a dangerous condition, she may have a duty to take action to prevent injury. *See Carvalho v. Toll Bros. & Devs.*, 651 A.2d 492, 497 (N.J. Super. Ct. App. Div. 1995) ("it is clear that an engineer or architect may owe a duty, despite the absence of any contractual obligations concerning safety, when the professional has actual

knowledge of a dangerous condition to which the job-site workmen are exposed"), *aff'd and remanded*, 675 A.2d 209 (N.J. 1996). In this case, there is sufficient evidence from which a jury could find that LHB had such knowledge. In particular, there is evidence that LHB engineers (including Babcock) were onsite on the day of the accident and were aware that workers were using heavy machinery to remove part of the drill-hall floor. *See, e.g.*, Kennedy Aff. [ECF No. 107] ¶¶ 10, 12 & Exs. 9, 11. (It is also possible that LHB engineers knew that little or no shoring was supporting the drill-hall floor, but the record is not clear.) The evidence in the record would allow a jury to find that the LHB engineers knew or should have known that the workers were in danger and thus had a duty to take action to protect them. The Court therefore denies LHB's motion insofar as it is based on the argument that it had no duty of care.

LHB next argues that, because Gardner Builders deviated from LHB's plans, any breach by LHB was not a proximate cause of the floor collapse. LHB relies heavily on *Goette v. Press Bar & Cafe, Inc.*, in which the Minnesota Court of Appeals held that "[t]he plans and designs of a professional are not the proximate cause of an injury if the work was not constructed or performed according to the plans." 413 N.W.2d 854, 856 (Minn. Ct. App. 1987). This case is distinguishable from *Goette*, however. In *Goette*, the contractor deviated from the architect's design by removing eight inches of brick across the entire front of the building and using a different type of bolting. *Id.* at 855. There

was no dispute that these deviations caused the building's parapet to fall, which in turn caused the plaintiffs' damages. *Id.* at 855–56.

In this case, LHB contends that Gardner Builders deviated from LHB's plans by failing to submit a demolition plan to LHB before commencing demolition.[3] Unlike in *Goette*, in which the causal link between the deviation and the damages was undisputed, here the causal link between the failure to submit a demolition plan and the collapse of the floor is far from clear, and the parties' briefing devotes little attention to the issue. Moreover, there is a factual dispute concerning whether Gardner Builders did, in fact, deviate from LHB's plans. Gardner Builders offers evidence that the portion of the floor that it was removing was non-structural, and that, under generally accepted industry practice, submission of a demolition plan is not required before non-structural elements are removed. *See* Knudsen Corr. Aff. [ECF No. 113] ¶¶ 7–10. In short, there are disputes of fact concerning whether Gardner Builders deviated from LHB's plans and, if so, whether that deviation was the cause of Dieter's damages.

For these reasons, LHB's motion for summary judgment is denied. The Court will place this case on its trial calendar.

## ORDER

---

[3]In its briefing, LHB also pointed to Alliance and Gardner Builders' decision to do the work in one phase instead of two. But LHB cited no evidence that this decision had anything to do with the collapse of the floor.

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT the motion of LHB, Inc. and Jennifer Babcock for summary judgment [ECF No. 80] is DENIED.

Dated: March 11, 2022　　　　　　　　　　s/Patrick J. Schiltz
　　　　　　　　　　　　　　　　　　　　Patrick J. Schiltz
　　　　　　　　　　　　　　　　　　　　United States District Judge